UNITED STATES *v.* WASHINGTON and others.

*(Circuit Court, W. D. Texas.   February Term, 1883.,*

CONSTITUTIONAL LAW—CIVIL RIGHTS ACT.
    The act of congress of March 1, 1875, entitled "an act to protect all citizens in their civil and legal rights," is unconstitutional.

Motion to Quash Information.
*George Goldthwaite* and *Pendexter & Wooten,* for the motion.
*A. J. Evans,* U. S. Atty., *contra.*

TURNER, J.   On the thirteenth day of June, 1883, the district attorney of Texas filed in this court an information against one John H. Washington and others.   The information was based upon an affidavit made by one White, stating the facts embraced in the information.   The information charges, in substance, that on the fifth day of August, 1882, one Laura Evans, a resident citizen of the state of Texas, desired to go from Austin, Texas, to the city of Houston, Texas, and that, in pursuance of such desire, purchased a first-class ticket of the Houston & Texas Central Railroad Company from Austin to Houston; that said railroad company is a corporation which owned and operated their railroad from Austin, Texas, to points south and south-east of said city of Austin, to Houston and other points in Texas, etc.; that the defendants, acting as agents of the said railroad company, refused the said Laura Evans admittance to the coach or car of said company used for the conveyance of persons of her sex, and required her to enter the car known as the smoking car, where she would be subjected to indignities and inconveniences not met with in the car usually occupied by females; and that she was thus discriminated against solely on account of her race and color, she being of African descent, etc.   The information is filed upon the idea that the acts complained of render the defendants liable to a prosecution under the act of congress of March 1, 1875, and to recover the penalty therein announced against persons violating the provisions of that act.

While the information does not state in terms that the Texas Central Railroad Company was chartered by the state of Texas, such is the import of the words, and such is the fact. Therefore the railroad company is, for all legal purposes, a person and resident and citizen of Texas, as well as their agents, the defendants. A motion is made to dismiss the case for want of jurisdiction of this court, the point being that the act of congress, so far as it undertakes to regulate and control the conduct of the private citizens of the same state, is without constitutional authority, and therefore of no effect. The authority for the act of congress referred to must be found, if found at all, in the fourteenth amendment of the constitution of the United States. It is universally conceded that the United States government is one of limited powers; that congress can only legislate upon such matters as it is authorized by the constitution of the United States, or such as arise by necessary implication from those actually and specifically conferred. The fourteenth amendment is as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No *state* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *state* deprive any person of life, liberty or property without due process of law, nor deny to any person without its jurisdiction the equal protection of the laws."

Then follows the provision which gives congress the power to enforce by appropriate legislation this provision. The act of congress invoked reads:

"That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances, on land or water, theaters and other places of public amusement, subject to the condition and limitations established by law, and applicable alike to citizens of every race and color, regardless of any conditions of servitude."

There is no allegation in the information that there is any law of the state which makes, or undertakes to make, any discriminations against persons of African descent, nor is it believed that any such law exists in this state. The defendants are all citizens of this state, and the ticket purchased was from one point in the state to another point in the state. The fourteenth amendment is a limitation upon the powers of the state and an enlargement of the powers of congress. If the state has not by its laws or officers overstepped these limitations, no case arises for the exercise of the power conferred on the federal congress. The first clause of the amendment simply declares who are citizens of the United States and of the state where they reside, and it does nothing more. The balance of the article is directed against state action. If it had been intended to confer upon congress the power to legislate with reference to the infraction of the rights of one citizen of the state against another

citizen of the same state, it would have said so.   I do not think the power was conferred by this section to declare that the federal court should have exclusive and concurrent jurisdiction with the state courts to protect the rights of national and state citizenship; if so, then the inhibition against the state action is superfluent.   I am of opinion, therefore, that the act of congress under which this action is prosecuted is without the sanction of the constitution.   The party injured has her redress in the state court.   How long our railroad companies will continue in their employ men possessed of the spirit which actuated the defendants in this case I do not know.   That the party complaining was entitled to accommodations equal in all things to other passengers who rode upon the train there can be no doubt.   It is no credit to the railroad companies that they retain in their employ agents such as these defendants, from the allegations in the information, seem to be.   The question before me, however, is one of jurisdiction.   It is not pretended that there is any un- friendly legislation against the colored man in this state, and it can- not be said that the act complained of is in any way connected with the instrumentalities used by the state in the administration of its government, either legislative, executive, or judicial.   In short, the state is in no manner connected with or implicated in the acts com- plained of, and it does not come within the inhibitions mentioned in the fourteenth amendment to the constitution, and consequently the authority for the act in question is wanting, and this court has no jurisdiction of this cause.   I am not without authority in this view of the case.   See the following cases: *In re Tiburcio Parrott,* 1 Fed. Rep. 481; *The Slaughter-house Cases,* 16 Wall. 36; *U. S.* v. *Cruik- shank,* 92 U. S. 542; *U. S.* v. *Harris,* 106 U. S. 629; S. C. 1 Sup. Ct. Rep. 601.

These cases must be held to be conclusive upon the point, and the motion to quash must prevail.

---

The first and second sections of the civil rights act, passed March 1, 1875, are unconstitutional enactments as applied to the several states, not being authorized either by the thirte nth or fourteenth amendments of the consti- tution.   The fourteenth amendment is prohibitory upon the states only, and the legislation authorized to be adopted by congress for enforcing it is not *direct* legislation on the matters respecting which the states are prohibited from making or enforcing certain laws, or doing certain acts, but is *corrective* legislation, such as may be necessary or proper for counteracting and redress- ing the effect of such laws or acts.   The thirteenth amendment relates only to slavery and involuntary servitude, (which it abolishes;) and although, by its reflex action, it establishes universal freedom in the United States, and con- gress may probably pass laws directly enforcing its provisions, yet such legis- lative power extends only to the subject of slavery and its incidents; and the denial of equal accommodations in inns, public conveyances, and places of public amusement, (which is forbidden by the sections in question,) imposes no badge of slavery or involuntary servitude upon the party, but, at most, infringes rights which are protected from state aggression by the fourteenth

amendment. Whether the accommodations and privileges sought to be protected by the first and second sections of the civil righ.s act, are or are not rights constitutionally demandable, and if they are, in what form they are to be protected, is not now decided. Nor is it decided whether the law, as it stands, is operative in the territories and District of Columbia; the decision only relating to its validity as applied to the states. Nor is it decided whether congress, under the commercial power, may or m iy not pass a law securing to all persons equal accommodations on lines o: public conveyance between two or more states. *The Civil Rights Cases,* 3 Sup. Ct. Rep. 18. See, also, *U. S.* v. *Buntin,* 10 FED. REP. 730, and note, 736.—[ED.